# EXHIBIT C

**DECLARATION OF JOCABED ROSARIO, STAFF ATTORNEY**

**THE DOOR'S LEGAL SERVICES CENTER**

I, Jocabed Rosario, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    My name is Jocabed Rosario, and I am a Staff Attorney with the Detained Minors Project at The Door's Legal Services Center located at 121 Avenue of the Americas, 3rd Fl, New York, NY 10013.

2.    On or about October 8, 2025, I was assigned to assist Allan Josue Martinez Martinez ("Allan") with his immigration matters while Allan remained in the custody of The Office of Refugee Resettlement (ORR), in New York.

3.    On October 14, 2025, I spoke with Allan through videocall and confirmed that he had an approved Form, I-360 Petition for Amerasian, Widow(er), or Special Immigrant and was eligible to adjust status, as his priority date is May 6, 2019. I explained I could assist him in filing a motion to terminate his immigration proceedings and in trying to reunify him with his mother. On this day, we also discussed the two interactions Allan had with law enforcement while living in Texas. I confirmed that Allan had been previously in ORR care in 2016 and was sponsored by his mother when he was only 8 years old. Following the arrest that occurred on August 26, 2025, Allan was placed into ORR care for a second time.

4.    On October 16, 2025, I spoke with Allan through videocall, and he confirmed that his mother was working on submitting the necessary paperwork to be his sponsor.

5.    On October 27, 2025, Shraddha Joshi, the paralegal working with me on Allan's case, submitted a Young Center referral requesting they serve as Allan's Child Advocate pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"). The Young Center started serving as Allan's Child Advocate on January 26, 2026.

6.      On November 12, 2025, my team requested a sponsorship update from ORR. ORR responded 6 days later on November 18, 2025, and informed us that Allan's mother was his primary sponsor and that his mother was scheduled for fingerprints and no further updates were provided at the time.

7.      On December 9, 2025, I requested another update on sponsorship from ORR via email. I also inquired about pursuing Long Term Foster Care ("LTFC") as Allan was showing signs of detention fatigue, stress, and anxiety at his prolonged detention. The ORR Federal Field Specialist ("FSS") informed me that children with active sponsorships should not be referred to LTFC. No further updates on sponsorships were provided.

8.      On December 11, 2025, my team and I spoke with Allan through videocall and confirmed that he wanted to pursue LTFC instead of continuing with sponsorship. Allan expressed to us that being in detention was causing him emotional and mental distress and would prefer to go to LTFC if it meant he could leave ORR's restrictive setting. On this day, we also emailed ORR to tell them that Allan wished to withdraw sponsorship with his mother and pursue LTFC. Allan's case manager acknowledged receipt of our request and would let us know if we needed to provide a Recommend States List ("RSL") to choose what states Allan would consider for LTFC.

9.      On January 6, 2026, I requested another sponsorship update from ORR. There was no response to my request from ORR.

10.     On January 23, 2026, I was alerted that Allan's ORR shelter had been placed under a Stop Placement Order and could not continue to house the current young people in their care. This meant Allan would be transferred to another ORR shelter. On January 29, 2026, Allan was transferred to another ORR shelter in Irvington, New York.

11.     On February 3, 2026, the paralegal spoke with Allan, and he expressed how frustrated he was with the transfer to the new ORR shelter. Allan was struggling with a new shelter environment that was even more restrictive than the shelter he had been in before. Allan expressed his desire to reunite with his mother and his family.

12.     On February 4, 2026, I requested an update on sponsorship from ORR via email. Again, I received no response.

13.     On February 9, 2026, I requested another update on sponsorship from ORR via email. I informed his case manager that to the best of my knowledge his mother had submitted everything requested to date. There was no response to my request for a sponsorship update.

14.     On February 10, 2026, I spoke with Allan through videocall and he shared that the winter jacket he received was from a friend but not ORR despite the freezing temperatures. His underwear was too tight and when he was not in class, he would have to sit in an empty room with just tables and desks. There was only one TV that was allowed to be used on weekends. He had no access to computers or radios. Allan spent his days writing or reading. Allan displayed extreme detention fatigue and inquired about when he would be reunified with his mother.

15.     On February 27, 2026, I sent an email to ORR providing them with the most recent and accurate information as it pertained to Allan's two juvenile arrests in Texas. I also provided them with his juvenile dispositional documents and proof of no pending criminal charges. I also asked if that had identified and submitted a post-18 plan for Allan since sponsorship had been stalled without explanation, and they had provided us with no new updates since December 9, 2025. I expressed my concern for Allan being re-detained upon aging out and requested there be a safety plan put in place so that he may be reunited with his mother without

any issues arising. ORR did not respond to my request for a sponsorship update nor acknowledge my email.

16.     On March 5, 2026, I met with Allan through videocall and asked him if he had received any updates on sponsorship. Allan informed me that he was told by his case manager, John Telleria Garcia, that he would be reunifying with his mother before his 18th birthday because of a new ORR policy. On that call, his case manager, John Telleria Garcia, joined the call with Allan and spoke to me directly. John told me that the FFS had approved Allan for an expedited sponsorship process that would require what was originally required from sponsors. John told me he received this update from the FFS and the Division of Sponsor Administration (DSA) on Monday, March 2, 2026. John informed us that the FFS was considering an expedited reunification process group of minors, who like Allan, had already been in ORR custody and released to a sponsor. Allan was in good spirits because he believed he was going to be reunified with his mother after being detained for so long.

17.     On March 10, 2026, my team and I sent another email to ORR providing them again with the information that Allan's first case was dismissed and that he had unfiled charges from his second arrest. We also requested any information regarding post-18 planning or sponsorship. ORR did not respond to our email, nor did they acknowledge our request.

18.     On March 20, 2026, I wrote an email to ORR asking if Allan's post-18 plan had been submitted. There was no response to my request.

19.     On this same day, March 20, 2026, we also asked Allan's mother through WhatsApp if she had heard from ORR regarding Allan's release. Allan's mother told us that she was told by ORR that they were waiting for a response for when Allan would be released, which could be the following week.

20.    On March 23, 2026, we sent yet another follow-up email asking if a post-18 plan had been identified and submitted given that Allan would be aging out of ORR custody on April 7, 2026. His case manager informed us that his post-18 plan was submitted the week before. The FFS confirmed that the post-18 plan was reviewed and approved by ORR.

21.    On March 27, 2026, Allan's mother informed us that the home study was completed and that it all went well. She was told that they would submit the results. This home study was a part of the post-18 plan for Allan to be Released on Recognizance ("ROR'ed") to his mother.

22.    On March 31, 2026, Allan's YC Advocate, Juliana Pinto McKeen ("Juliana"), submitted a Best Interests Determination in Support of the ROR of Allan to Deportation Officer Chabert Eugene ("Eugene"), Juliana informed me she received no response from Eugene.

23.    On March 31, 2026, I also submitted a Letter in Support of Allan's Release on Recognizance. I received no response.

24.    On April 2, 2026, the paralegal informed me that she met with Allan in-person at the ORR shelter, and he informed her that he completed his interview on March 26, 2026, with the shelter as part of his post-18 plan to be ROR'ed to his mother in Texas. The paralegal spoke with Allan about his release and the plan for him to be taken to New York City so that he could take a bus to Texas and reunite with his mother. Allan was very excited to be reunited with his mother and shared the things he was excited to do when he was back in Texas.

25.    On April 6, 2026, Juliana sent a follow-up email to Eugene asking if any decision had been made as to Allan's release on his 18th birthday. Juliana informed me that Eugene did not respond to her follow-up email.

26.     On April 6, 2026, I also spoke with the supervisor of the ORR shelter, Tamaris Marquez, who informed me that she had not received confirmation from Eugene about whether Allan would be ROR'ed or not. Tamaris expressed her frustration with the situation because the shelter should have been notified about the plan for Allan's release. Tamaris provided me with Eugene's cell phone number (646) 357-0356, so that I may call him and inquire.

27.     On April 6, 2026, I called Eugene and he did not pick up my call. I then sent a follow-up email to Eugene seeking confirmation as to whether Allan would be ROR'ed at the ORR shelter or transported to 26 Federal Plaza to be ROR'ed. I tried calling Eugene for a second time and he answered my call. Eugene informed me that he was waiting for a decision from Headquarters and that the decision could come tonight or very early in the morning.

28.     On this day, I spoke with Allan and Tamaris again and told them what Eugene had said. Allan was frustrated with the unfairness of the situation and was anxious with the situation at hand.

29.     On April 7, 2026, Tamaris called me at 8:00am and informed me that Allan would most likely be taken to 26 Federal Plaza and would be detained by ICE. Around 9am, Tamaris called the paralegal and I and told us ICE would come to the ORR shelter to pick Allan up.

30.     That same morning, on April 7, 2026, Tamaris called me and the paralegal and told us that Deportation Officer Michael, informed her that the New York City Field Officer Juvenile Coordinator ("FOJC") recommend that Allan be ROR'ed but that ORR Headquarters in DC decided to detain Allan and that this was not a decision they wanted, but had to follow.

31.     This same day, on April 7, 2026, I and the paralegal, called Tamaris and asked her if she could provide us with the text message that the Deportation Office Michael sent her

regarding the FOJC's decision to ROR Allan, but she could not provide us with this proof as it went against ORR policy.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in New York, New York.

Jocabed Rosario

Jocabed Rosario, Esq

Executed this 11th day of April 2026