# EXHIBIT D



www.theyoungcenter.org
Chicago, IL | Harlingen, TX | Houston, TX | Los Angeles, CA |
New York, NY | Phoenix, AZ | San Antonio, TX | Washington, DC |
Grand Rapids, MI

*Via electronic mail*

March 25, 2026

Officer Chabert Eugene
Deportation Officer, Juvenile Case Management Unit
Field Office Juvenile Coordinator
New York City Field Office
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

**Re:** **Child Advocate Best Interests Determination in Support of the Release on Recognizance of Allan Josue Martinez Martinez, A█████████.**

Dear Officer Eugene,

The Young Center for Immigrant Children's Rights serves as the federally appointed Child Advocate for Allan Josue Martinez Martinez, A█████████. The Office of Refugee Resettlement (ORR) appointed the Young Center to serve as Allan's Child Advocate pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA).[1] As the TVPRA-appointed Child Advocate, our role resembles that of the guardian ad litem in state court. We assess the best interests of particularly vulnerable unaccompanied children, like Allan, and then develop determinations regarding their custody, detention, release, legal representation, relief from removal, and safe repatriation. The Young Center started serving as Allan's Child Advocate on January 26, 2026.[2]

**Allan is not a danger to himself, the community or a flight risk, therefore, as Allan's Child Advocates, we have determined that it is in Allan's best interests to be released on his own recognizance to his mother, Ms. █████████████████.** Allan turns eighteen on April 7, 2026, at which point he will age out of ORR care. For an unaccompanied child in ORR care who reaches eighteen years of age and is transferred to the custody of the Department of Homeland Security (DHS), DHS is obliged to "consider placement in the least restrictive setting available after taking into account the [young person's] danger to self, danger to the community, and risk of flight."[3] Allan's mother, Ms.█████████, who lives in Dallas, Texas, has agreed to receive Allan. Placement with her is the least restrictive setting available for Allan. Allan is neither a danger to himself, the community, nor is he a flight risk.

---

[1] 8 U.S.C.A. § 1232(c)(6)(A) (authorizing the Secretary of Health and Human Services "to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied alien children").

[2] Appendix A.

[3] 8 U.S.C. §1232(c)(2)(B).



www.theyoungcenter.org
Chicago, IL | Harlingen, TX | Houston, TX | Los Angeles, CA |
New York, NY | Phoenix, AZ | San Antonio, TX | Washington, DC |
Grand Rapids, MI

## I.    CASE SUMMARY[4]

Allan is seventeen years old. Allan lived with his mother, Ms. ▉▉▉▉▉▉▉▉▉, in Fort Worth, Texas for the past nine years until his most recent entry into ORR care on August 26, 2025. Allan was previously in ORR care in 2016 and was sponsored out by his mother. In 2016, ORR deemed Ms. ▉▉▉▉▉▉▉▉ a safe and suitable sponsor, and she has taken care of her child since his 2016 release. While under her care, Allan graduated from high school early and planned to study to become an HVAC technician. Additionally, Allan has an approved I-360 and is eligible to adjust his status, as his priority date is May 6, 2019. Ms. ▉▉▉▉▉▉▉ wants to receive her son, and she has diligently completed the steps to sponsor Allan. Allan's relationship with his mother has been most recently proven through his birth certificate. She has not been denied as a sponsor. Ms. ▉▉▉▉▉▉▉ agreed to pay for Allan's airfare to Fort Worth, Texas.

While living in Texas, Allan had two interactions with law enforcement. In 2024, he was arrested on charges of evading arrest, unauthorized use of a vehicle, resisting arrest, and collision involving damage to a vehicle. Allan completed a diversion program, supervised probation, and the case was closed. In July 2025, Allan was arrested on charges of assault with a deadly weapon. However, no case was ever filed. No case number was ever assigned. There were no court hearings. On February 2, 2026, a criminal law magistrate provided a letter to Allan's immigration attorney stating that the Tarrant County Criminal District Attorney's Office notified the court of the dropped charge or rejected filing. The letter from the criminal law magistrate is provided in a letter in support of release by Allan's immigration attorney, Jocabed Rosario, Esq. Allan does not have any pending charges or warrants. His record is clean.

When speaking to Allan about the incident that led to the July 2025 arrest, he shared that he was at a friend's house when police arrived. The police said they were looking for a suspect and told him he matched the description. The police did not have a warrant to enter the home, and he told them he did not want to speak to them. The police tried to pull him out of the house and then entered the premises without a warrant. Allan did not have a weapon on his person. Police additionally searched the home and did not find a weapon. Police said he resisted arrest, but Allan contests this claim. Allan's legal service provider is actively trying to gain access to the police report and additional records.

Following this arrest, Allan was placed into ORR care for a second time on August 26, 2025, at Children's Village Staff Secure in Dobbs Ferry, New York. He was stepped down to Children's Village shelter on September 27, 2025, due to his good behavior and compliance with the rules. Due to a stop-placement at Children's Village, Allan was transferred to Abbott House Shelter on January 29, 2026. He has been in ORR care for days. During this time, Allan continuously shows personal improvement, good behavior, and a drive to learn more; he has not attempted to abscond, and in fact has participated in group activities and sought out personalized educational opportunities. Allan has accrued no CLEs while in care and has followed program rules. A January 28, 2026, Children's Village transfer request stated, "[s]ince his admission to the program, his behavior has not been of a concern.

---

[4] The details in this section are based on information gathered from Allan and the stakeholders involved in his case.



www.theyoungcenter.org
Chicago, IL | Harlingen, TX | Houston, TX | Los Angeles, CA |
New York, NY | Phoenix, AZ | San Antonio, TX | Washington, DC |
Grand Rapids, MI

Additionally, the minor has not accrued any behavioral SIR's. The minor has not demonstrated any flight risk, aggressive or sexually inappropriate behaviors since his admission to the program."[5] A January 29, 2026, discharge summary from Children's Village shelter to Abbott House shelter confirmed this: "Youth exhibited positive behavior, followed program rules, and engaged well with all peers and staff."[6] Allan continues to follow program rules and has not accrued any CLEs while placed at Abbott House shelter.

## II.    BEST INTERESTS DETERMINATION: IT IS IN ALLAN'S BEST INTERESTS TO BE RELEASED ON HIS OWN RECOGNIZANCE TO HIS MOTHER, AS IT IS THE LEAST RESTRICTIVE SETTING FOR ALLAN AND HE IS NOT A DANGER TO HIMSELF OR THE COMMUNITY, NOR IS HE A FLIGHT RISK.

As Allan's Child Advocate, we are charged with recommending a course of action that will safeguard his best interests. We assess best interests by considering a child's expressed wishes, their safety and well-being, as well as liberty, identity, development, and family integrity.[7]

The TVPRA states that DHS "shall consider placement in the least restrictive setting available after taking into account the [young person's] danger to self, danger to the community, and risk of flight" for a minor who turns 18 and is transferred to DHS's custody.[8] A young person is "eligible to participate in alternative[s] to detention programs…which may include placement…with an individual..."[9] Additionally *Garcia Ramirez v. ICE*, stipulates that for "each and every age-out, DHS must (1) take into account the statutory factors, (2) do so as it considers placing the age-out in the least restrictive setting available, and (3) make the age-out eligible for the identified alternative to detention options."[10] Lastly, there is a preference "for family unity and for the safety and stability of the [c]hild shall be the primary criteria for determining placement of the[c]hild."[11] Allan's mother, Ms. ████, is willing and able to receive Allan, and wishes to be reunited with him.

Allan does not pose a danger to himself nor to the community. Though Allan has interacted with law enforcement in the past, he has no criminal convictions. He has no pending charges. Allan understands the importance of complying with the laws of the United States and is committed to continuing his immigration case. Allan has an approved I-360 and is eligible to adjust his status as his priority date is May 6, 2019. Allan is not a flight risk. In his 216 days in ORR care, Allan has not attempted to leave ORR custody. Allan's mother has agreed to receive Allan and to accompany him to any ICE check-

---

[5] Transfer Request, Anessa Brito, January 28, 2026.

[6] Discharge Summary, Anessa Brito, January 29, 2026.

[7] *See* Subcomm. on Best Interests, Interagency Working Grp. On Unaccompanied and Separated Children, *Framework for Considering the Best Interests of Unaccompanied Children* 5, 9-11 (2016). Members of the Subcommittee include DHS, HHS, the Department of State, and the Department of Justice.

[8] 8 U.S.C. §1232(c)(2)(B).

[9] *Id.*

[10] *Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, No. 18-508, 152 (D. D.C. July 2, 2020).

[11] Comm'n on Immigration, Am. Bar Ass'n, *Standards for the Custody, Placement and Care; Legal Representation; and Adjudication of Unaccompanied Alien Children in the United States* § VII.D.8(2018).



www.theyoungcenter.org
Chicago, IL | Harlingen, TX | Houston, TX | Los Angeles, CA |
New York, NY | Phoenix, AZ | San Antonio, TX | Washington, DC |
Grand Rapids, MI

ins and assist him in adjusting his status. Allan has legal representation, and The Door will continue to represent him beyond his release from ORR.

Releasing Allan to his mother, Ms. ▉▉▉▉▉▉, would be the least restrictive setting available to Allan. Pursuant to federal law, DHS must take this into consideration, as it is an alternative to detention. This would allow Allan to pursue his plans of studying to become an HVCA technician while living with his mother. Lastly, releasing Allan to his mother would preserve the family unity and provide stability for Allan.

### III.    CONCLUSION

Allan ages out of ORR care on April 7, 2026. His mother, Ms. ▉▉▉▉▉▉ has agreed to receive Allan and accompany him to any ICE check-ins and future court hearings. Allan has legal representation and is eligible to adjust his status. Allan is not a danger to himself or the community, nor is he a flight risk. **Based on Allan's' right to be released to the least restrictive setting and right to family unity to be with his mother, in addition to Allan not being a danger nor a flight risk, we believe it is in Allan's Best Interests to be released on his own recognizance, as it is the least restrictive setting available.**

Thank you for your consideration. Please let us know if we can provide any additional information to support a safe and timely release. Please contact me at 332-251-5232 or jpintomckeen@theyoungcenter.org with any questions.

Sincerely,

Juliana Pinto McKeen
TVPRA-appointed Child Advocate

cc:    Jocabed Rosario, Esq., Staff Attorney, The Door's Legal Services Center

# Appendix A



OMB 0970-0553 [valid through 04/30/2025]

## Administration for Children & Families
### Office of Refugee Resettlement

# Child Advocate Recommendation and Appointment

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 section 235(c)(6) authorizes the Secretary of Health and Human Services to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied children. This appointment authority has been delegated to the Office of Refugee Resettlement (ORR). ORR uses this form to determine whether a Child Advocate shall be appointed and to document the Child Advocate's appointment for unaccompanied children (UC) in ORR custody.

| Section A: Referral |
|---|

*To be completed by the individual referring the UC for child advocate services.*

**1. Referrer Information**

| | | | |
|---|---|---|---|
| Referrer Name | ███████████ | Date of Referral | 8/27/2025 |
| Relationship to UC | Select ▼ | | |

**2. UC Information**

| | | | |
|---|---|---|---|
| UC Name | Allan Josue Martinez Martinez | A# *[no spaces]* | ██████ |
| Country of Origin | Honduras | Date of Birth | 4/7/2008 |
| Care Provider Name | Children's Village (Shelter): Dobbs Ferry | Admission Date | 9/27/2025 |
| Language(s) Spoken by UC | SPANISH | | |

**3. Reason for Referral** *(Check all that apply)*

- [ ] UC is between the ages 0-12
- [ ] UC is placed in a residential treatment center or therapeutic facility
- [ ] UC is pregnant or parenting
- [ ] UC has a physical or mental disability
- [ ] UC is a national from a country known to traffick children
- [ ] UC has been identified as a possible child trafficking victim (Interim Assistance Letter, Eligibility Letter, etc.)
- [ ] UC has a criminal or delinquency history and/or is placed in a staff secure facility or secure facility, and there are outstanding issues affecting the UAC's release or discharge plan
- [ ] UC has been the victim of a crime
- [ ] UC will turn 18 in less than six months of placement and family reunification is unlikely

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104-13) STATEMENT OF PUBLIC BURDEN: The purpose of this information collection is to allow care providers and other stakeholders to recommend appointment of a child advocate for a UC. Public reporting burden for this collection of information is estimated to average 0.25 hours per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. This is a mandatory collection of information (Homeland Security Act, 6 U.S.C. 279, and Trafficking Victims Protection Reauthorization Act, 8 U.S.C. 1232). An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information subject to the requirements of the Paperwork Reduction Act of 1995, unless it displays a currently valid OMB control number. If you have any comments on this collection of information please contact UCPolicy@acf.hhs.gov.

# Child Advocate Recommendation and Appointment
## Office of Refugee Resettlement

☐ UC is not proficient in a language spoken by staff at the UAC's care provider, and there is no accessible interpreter routinely available

☐ UC is identified as being eligible for legal relief

☐ UC has a credible fear of returning to their country of origin and/or are seeking voluntary departure despite concerns about their safety in their home country

☐ UC lacks appropriate legal representation, or there is a good faith belief that the UAC's legal representative has ties to child trafficking or criminal activity

☑ UC is expected to have a protracted stay of over 120 days in ORR custody

☐ UC's potential sponsor is undergoing a home study

☐ UC is unable to make an independent decision

☐ Other case where the UC is considered to be exceptionally vulnerable. Explain here:

[   ]

## Section B: Recommendation and Appointment

*To be completed by the child advocate program.*

**1. Does your program recommend that ORR appoint a Child Advocate, and confirm that an individual Child Advocate is available for this UC based on the criteria selected?**     ☑ Yes  ☐ No

If no, explain here:

Select Reason

If more information is needed, explain here:

[   ]

**2. Name of Child Advocate Program Official Making Recommendation** ████████████████

**3. Date of Recommendation** 1/15/2026

**4. Name of Individual Child Advocate Identified for Assignment** ████████████████

## Section C: ORR Approval

*To be completed by ORR.*

**Is the recommendation for the appointment of a Child Advocate approved for the above named UC?**     ☑ Yes  ☐ No

If no, explain here:

[   ]

Christie L.
Appelhanz -S
Digitally signed by Christie L.
Appelhanz -S
Date: 2026.01.26 12:03:39
-06'00'

Signature of ORR Division of Unaccompanied
Children Operations Director

[   ] Date

## Child Advocate Recommendation and Appointment
### Office of Refugee Resettlement

☐ UC is not proficient in a language spoken by staff at the UAC's care provider, and there is no accessible interpreter routinely available

☐ UC is identified as being eligible for legal relief

■ UC has a credible fear of returning to their country of origin and/or are seeking voluntary departure despite concerns about their safety in their home country

☐ UC lacks appropriate legal representation, or there is a good faith belief that the UAC's legal representative has ties to child trafficking or criminal activity

■ UC is expected to have a protracted stay of over 120 days in ORR custody

☐ UC's potential sponsor is undergoing a home study

☐ UC is unable to make an independent decision

☐ Other case where the UC is considered to be exceptionally vulnerable. Explain here:

---

### Section B: Recommendation and Appointment

*To be completed by the child advocate program.*

**1. Does your program recommend that ORR appoint a Child Advocate, and confirm that an individual Child Advocate is available for this UC based on the criteria selected?**  ☑ Yes  ☐ No

If no, explain here:

Select Reason

If more information is needed, explain here:

**2. Name of Child Advocate Program Official Making Recommendation**

**3. Date of Recommendation**  02/05/2026

**4. Name of Individual Child Advocate Identified for Assignment**  Child Advocate: Juliana Pinto McKeen ; Child Ad

---

### Section C: ORR Approval

*To be completed by ORR.*

**Is the recommendation for the appointment of a Child Advocate approved for the above named UC?**  ☑ Yes  ☐ No

If no, explain here:

Christie L.
Appelhanz
Digitally signed by Christie L.
Appelhanz
Date: 2026.02.06 16:21:31
-05'00'

Signature of ORR Division of Unaccompanied
Children Operations Director

02/06/2026

Date

---